# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MILLER BREWING COMPANY**
      **Plaintiff,**

      v.                                 Case No. 04C1123

ACE US HOLDINGS, INC., ACE AMERICAN
INSURANCE CO., ACE INA HOLDINGS, INC.,
AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE CO., AIU INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, HARTFORD FIRE INSURANCE
COMPANY, HARTFORD ACCIDENT and INDEMNITY
COMPANY, FIRST STATE UNDERWRITERS AGENCY OF
NEW ENGLAND REINSURANCE CORPORATION,
TWIN CITY FIRE INSURANCE COMPANY, LUMBERMENS
MUTUAL CASUALTY COMPANY, ABC INSURANCE
COMPANY, DEF INSURANCE COMPANY, GHI INSURANCE
COMPANY, JKL INSURANCE COMPANY, MNO INSURANCE
COMPANY, PQR INSURANCE COMPANY, STU INSURANCE
COMPANY, and XYZ INSURANCE COMPANY,
      **Defendants.**

---

## DECISION AND ORDER

Plaintiff Miller Brewing Company ("Miller") brought this action in Wisconsin state court naming as defendants some or all of its insurers, including several unnamed, alleging that defendants wrongly refused to defend lawsuits brought against it. Miller brought breach of contract and bad faith claims against some defendants and, pursuant to Wisconsin's declaratory judgment act, Wis. Stat. § 806.04, sought declaratory judgments that all defendants' policies provided coverage in the underlying lawsuits. Miller sought damages in an amount necessary to reimburse it for the cost of defending the suits, punitive damages and prejudgment interest. Pursuant to 28 U.S.C. §§ 1332(a) and

1441(a), defendants timely removed the action. Based on abstention doctrines and the doctrine of forum non-conveniens, defendants now ask me to refrain from exercising jurisdiction over the action and either dismiss or stay it. Defendants base their request on the fact that before Miller filed the present action, defendants brought an action against Miller in New York state court raising the same issues as Miller's suit.[1]

Before discussing defendants' motion, however, I will address the matter of the unnamed defendants. "[B]ecause the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." Howell v. Tribune Entm't Co., 106 F.3d 215, 218 (7th Cir. 1997). However, "naming a John Doe defendant will not defeat the named defendants' right to remove a diversity case if their citizenship is diverse from that of plaintiffs." Id. (citing 28 U.S.C. § 1441(a) ("For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded.")). Thus, in the present case, diversity jurisdiction is proper despite the presence of John Doe defendants.

However, "[t]he use of fictitious names for parties . . . is generally frowned upon." KFP v. Dane County, 110 F.3d 516, 519 (7th Cir. 1997) (citing 2A James Wm. Moore, et al., Moore's Federal Practice 10.02 (2d ed. 1995)). Thus, "district courts have discretion

---

[1]Defendants Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, First State Underwriters Agency of New England Reinsurance Corporation and Twin City Fire Insurance Company (collectively, the "Hartford defendants") originally filed a motion to dismiss or stay. Defendants American International Group, Inc. and American International Specialty Lines Insurance Co. (collectively "AISLIC"), defendants ACE US Holdings, ACE American Insurance Co., ACE INA Holdings, Inc. (collectively "ACE"), defendants AIU Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA (collectively "AIG"), and defendant Lumbermens Mutual Casualty Company ("Lumbermens") all joined in the motion.

2

as to whether such claims [against unnamed defendants] may be sustained." Kennington v. Carter, 216 F. Supp. 2d 856, 857 (S.D. Ind. 2002); see also K.F.P., 110 F.3d at 519. In the present case, Miller gains no advantage by filing against unnamed defendants and will not be prejudiced if I dismiss them. Therefore, I will dismiss Miller's claims against the unnamed defendants and permit it to seek leave to amend the complaint if it identifies them.

## I. FACTS

Plaintiffs in class action lawsuits in California (the Goodwin suit) and Ohio (the Eisenberg suit) named Miller, a manufacturer and seller of alcoholic beverages, as a defendant and alleged that it engaged in an illegal marketing scheme designed to induce underage individuals to consume alcoholic products. When Miller tendered the defense of these suits to defendants, the Hartford defendants denied coverage, AISLIC and Lumbermens agreed to defend Miller under a reservation of rights, and ACE and AIG did not respond. On the same day that they denied coverage, the Hartford defendants brought an action against Miller in New York state court.[2] Miller removed the case but plaintiffs (the Hartford defendants) moved to remand, and the court remanded the case on the ground that it had been improperly removed. Miller then moved to dismiss, which motion is presently pending. Six days after the Hartford defendants filed suit in New York, Miller

---

[2] The Hartford defendants denied coverage based on an intentional acts exclusion in their policies. In their letter denying coverage, the Hartford defendants stated: "The Hartford policy has provided that there is no coverage for bodily injury that is expected or intended from the standpoint of the insured." (Nolan Aff., Ex. 13.) The Hartford defendants took the position that their policies did not provide coverage because the Goodwin and Eisenberg suits alleged "intentional conduct designed to achieve an intended result." (Id.)

3

commenced the present action. Additional facts will be stated in the course of the decision.

## II. DISCUSSION

### A. Abstention Standard

A motion to dismiss or stay based on an abstention doctrine raises the question of whether a court should exercise subject matter jurisdiction. Thus, I will consider defendants' request for abstention under Fed. R. Civ. P. 12(b)(1). Beres v. Vill. of Huntley, 824 F. Supp. 763, 766 (N.D. Ill. 1992). In reviewing a Rule 12(b)(1) motion, I look both to the allegations in the complaint and to other materials relating to the exercise of jurisdiction. In the present case, such materials include the filings in the New York action. I may consider such materials without converting the motion into one for summary judgment. English v. Cowell, 10 F.3d 434, 437 (7th Cir. 1993). I take plaintiff's allegations as true and draw all reasonable inferences from them in the light most favorable to plaintiff. Beres, 824 F. Supp. at 766.

Under Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), where a concurrent state proceeding is pending, a district court may abstain from exercising jurisdiction if the circumstances are exceptional and if abstention would promote "'wise jurisdictional administration.'" Clark v. Lacy, 376 F.2d 682, 685 (7th Cir. 2004) (quoting Colo. River, 424 U.S. at 818). However, abstention from the exercise of federal jurisdiction is the exception, not the rule. Colo. River, 424 U.S. at 813 (stating that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a

4

District Court to adjudicate a controversy properly before it") (quoting County of Allegheny v. Frank Machuda Co., 360 U.S. 185 (1959) (internal quotations omitted)). Colorado River makes clear that district courts have a "virtually unflagging duty" to exercise federal jurisdiction when it exists. Id. at 817.

However, for actions brought under the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201(a), the Supreme Court has developed a separate abstention doctrine under which district courts may more easily abstain from exercising jurisdiction. The FDJA states in relevant part that: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has interpreted this language as granting district courts discretion as to whether to exercise jurisdiction under the statute. Wilton v. Seven Falls Co., 515 U.S. 277, 286-88 (1995) (stating that "Brillhart [ v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)] makes clear that District Courts possess discretion in determining whether and when to entertain an action under the [Federal] Declaratory Judgment Act."). Thus, as construed by the Supreme Court, the FDJA essentially builds the abstention doctrine into the grant of jurisdiction. Steven Plitt & Joshua D. Rogers, Judicial Abstinence: Ninth Circuit Jurisdictional Celibacy for Claims Brought Under the Federal Declaratory Judgment Act, Seattle U. L. Rev. 751, 757 (2004) (citing Wilton, 515 U.S. at 282).

When a federal district court is asked to exercise its discretion to accept jurisdiction under the FDJA at the same time that a parallel case is pending in state court, the question of whether the district court should accept or deny jurisdiction is generally analyzed under

the standard set forth in Brillhart. Under such standard, courts must consider whether the controversy could be better settled in the state court proceeding, paying particular attention to the fact that it is ordinarily "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit when another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495. In Wilton, the Supreme Court confirmed that the Brillhart test, not the "exceptional circumstances" standard set forth in Colorado River, governs a district court's exercise of discretion in a FDJA action when a parallel lawsuit is pending in state court. In the present case, defendants argue that I should analyze the question of whether to exercise jurisdiction under the Brillhart standard, and Miller contends that I should apply the Colorado River standard.

For the reasons explained below, I conclude that Colorado River supplies the appropriate analytic framework. First, the Supreme Court has not applied the Brillhart abstention doctrine in cases not arising under the FDJA, and the present case does not involve the FDJA. Rather, Miller's action is based on a state statute, Wis. Stat. § 806.04, and the case is in federal court because it was removed. The Supreme Court has also noted that Brillhart does not apply in all declaratory judgment actions but only in "certain classes" of them. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (stating that the traditional powers of abstention arising in equity had been extended to some declaratory judgment cases).

Second, in granting district courts broad powers of abstention in Brillhart and Wilton, the Supreme Court relied on the language of the FDJA. The Court emphasized that the FDJA granted courts discretion to decide whether to exercise jurisdiction and did not limit

6

the circumstances under which a court could decline to exercise jurisdiction. In contrast, the Wisconsin declaratory judgment statute is a pure grant of jurisdiction, providing that courts "shall have power to declare rights, status and other legal relations," and authorizing them to decline to render judgment only if such judgment "would not terminate the controversy or remove an uncertainty." Wis. Stat. § 804.04(6). Thus, under the FDJA, judicial discretion is considerably broader than under the Wisconsin statute. For a federal court to apply the Brillhart standard to a removed case, it would have to conclude that it had acquired the same discretion over the action than if the case had been brought under the FDJA. Plitt & Rogers, supra, at 787. However, removal does not change the legal basis of a removed action from state law to that of comparable federal law. Id. (citing Strachan v. Nisbet, 202 F.2d 216, 218 (7th Cir. 1953) (stating that under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the jurisdiction of a federal court in a diversity case applying a state statute "is a limited jurisdiction as provided by the state statute"); see also Knapp v. N. Am. Rockwell Corp., 506 F.2d 361, 364 (3d Cir. 1974); Carson v. Nat'l Bank of Commerce Trust & Sav., 501 F.2d 1082, 1083 (8th Cir. 1974). A case that is removed to federal court based on diversity jurisdiction remains a distinct action based on and governed by state law. Walker v. Armco Steel Corp., 446 U.S. 740, 745 (1979).

Finally, in the Seventh Circuit, a district court may not remand or dismiss a properly removed case based on an abstention doctrine. Ryan v. State Bd. of Elections, 661 F.2d 1130, 1131 (7th Cir. 1981) (stating that court erred by remanding properly removed case based on abstention because grounds for remand specified in 28 U.S.C. § 1447(c) did not include abstention and citing Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 351

7

(1976))[3]; see also Allstate Ins. Co. v. Longwell, 735 F. Supp. 1187, 1191 (S.D.N.Y. 1990) (stating that "where there is diversity jurisdiction which is non-discretionary, the court may not eliminate the case from its docket, whether by a remand or a dismissal").

Thus, I decline to apply the Brillhart standard to defendants' request for abstention. However, even if I could legitimately apply Brillhart to Wisconsin declaratory judgment actions that are removed on diversity grounds, I would nevertheless apply the Colorado River standard in the present case. This is so because in addition to seeking a declaratory judgment, Miller also seeks coercive relief, i.e., monetary damages. Although some courts have applied Brillhart abstention principles to suits in which the plaintiff seeks both coercive and declaratory relief, that approach appears inconsistent with the principle that a district court has a "virtually unflagging duty" to exercise federal jurisdiction when it exists. Colo. River, 424 U.S. at 817; see also Wilton, 515 U.S. at 277 (stating that the argument that Brillhart might have application beyond the context of declaratory judgments was rejected by the Court in Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)); Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 497 n.4 (5th Cir. 2003) (applying Colorado River doctrine to action containing claims for coercive and declaratory

---

[3]Although one district court has predicted that the Seventh Circuit would allow remand of a properly removed case on the basis of an abstention doctrine, see Stevo v. CSX Transp., Inc., 940 F. Supp. 1222, 1225 (N.D. Ill. 1996), the Seventh Circuit has not overruled Ryan. Moreover, there are good reasons to bar abstention in properly removed cases. "[A]bstention in removal situations undermines the basis for removal, which is to offer a state court defendant an alternative forum in which to adjudicate" its claims. Linda S. Mullenix, A Branch Too Far: Preening the Abstention Doctrine, 75 Geo. L.J. 99, 155 (1986); see also Kelly D. Hickman, Note: Federal Court Abstention in Diversity of Citizenship Cases, 62 S. Cal. L. Rev. 1237, 1254 (1989) (noting that "if diversity jurisdiction was created to prevent state courts from discriminating against out-of-state litigants, then abstention defeats this purpose" and that "if Congress desired federal courts to hear diversity cases . . . it is a violation of separation of powers" for the court to abstain).

8

relief); Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 878-79 (8th Cir. 2002) (finding Brillhart doctrine inapplicable in case involving request for injunctive relief as well as declaratory judgment); Vill. of Westfield v. Welch's, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (declining to apply Brillhart because action did not seek purely declaratory relief); James Wm. Moore, 17A Moore's Federal Practice § 122.06[6] (3d ed. 2005) (stating that "Brillhart analysis applies only when the action does not include a request for coercive relief").

**B.    Application of Colorado River Standard**

In applying the Colorado River standard, I employ a two-part analysis. First, I determine "whether the concurrent state and federal actions are actually parallel." Clark, 376 F.2d at 685 (citing LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989)). If the actions are parallel, I consider a list of non-exclusive factors that might demonstrate the existence of exceptional circumstances. Id. Such factors include: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiffs rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. Id. (citing Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 694-95 (7th Cir. 1985)).

Suits are parallel if "'substantially the same parties are litigating substantially the same issues simultaneously in two fora.'" AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 518 (7th Cir. 2001) (quoting Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154,


9


1156 (7th Cir. 1990)). In the present case, the parties do not seriously dispute that the present action and the New York action are parallel, thus I turn to a discussion of the non-exclusive factors. The Seventh Circuit has indicated that although the sheer number of factors "creates the risk of unpredictable and inconsistent results, the Supreme Court has effectively told courts how those factors should be weighed. It has cautioned that abstention is appropriate only in 'exceptional circumstances' and has also emphasized that federal courts have a 'virtually unflagging obligation . . . to exercise jurisdiction given them.' Following this guidance, we have recognized a general presumption against abstention." AXA Corp. Solutions v. Underwriters Reinsurance, 347 F.3d 272, 278 (7th Cir. 2003).

In the present case, having considered the relevant factors, I conclude that defendants do not overcome the presumption against abstention. The first factor, jurisdiction over property, has no application. The second factor, the relative inconvenience of the competing fora, does not weigh in either party's favor. Potential witnesses reside in Milwaukee, New York and elsewhere. The third factor is the desirability of avoiding "piecemeal litigation." Neither in Colorado River nor in Moses H. Cone did the Supreme Court define "piecemeal litigation" or provide criteria for identifying it. Mullenix, supra, at 126. If both the present case and the New York action proceed, duplicative litigation will result. However, "it is not enough to justify abstention that a failure to stay the federal suit may result in judicial diseconomy – having two suits instead of one. That will always be possible when there is a parallel state proceeding." Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982). Further, if the present case proceeds, the New York case might be stayed. Thus, this factor does not weigh heavily in the abstention calculus.

The fourth factor is the order in which jurisdiction was obtained in the concurrent forum. This factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. Miller filed the present action six days after defendants started the New York suit. In neither case has fact-finding commenced. Thus, this factor does not significantly favor either party. The fifth factor is the source of governing law, state or federal. Although "particular weight must be given to the presence of a federal question," Sverdrup Corp. v. Edwardsville Sch. Dist. No. 7, 125 F.3d 546, 549 (7th Cir. 1997), the absence of a federal issue is not a compelling argument for Colorado River abstention. In a diversity case, courts always apply state substantive law. Erie R. R. Co., 304 U.S. 64. In the present case, state law applies, thus, this factor does not weigh heavily for or against abstention. The sixth factor, the adequacy of the state court to protect the federal plaintiff's rights, is of little moment. The state forum is clearly adequate. I have already discussed the seventh factor, the relative progress of the state and federal proceedings. The eighth factor, the presence or absence of concurrent jurisdiction, is also of little significance. Both courts have jurisdiction.

However, the ninth factor, the availability of removal, weighs significantly against abstention. If I stay or dismiss the action, Miller will lose its opportunity to litigate in a federal forum even though there is diversity of citizenship. Miller removed the New York action, but defendants were able to have the case remanded. If I decline to exercise jurisdiction, Miller will be forced to litigate in state court in New York. Diversity litigants are not second-class citizens. AXA Corp., 347 F.3d at 279 (citing Evans Transp. Co., 693 F.2d

11

at 717) (stating that "we are not free to treat the diversity litigant as a second-class litigant")). Defendants themselves acknowledged the significance of a federal forum to diversity litigants when they removed Miller's suit from state court in Wisconsin thus protecting their own rights to litigate in federal court.

The tenth factor, the vexatious or contrived nature of the federal claim, is inapplicable in the present case because there is no federal claim. Defendants argue that Miller's suit is vexatious or contrived because Miller filed it after their suit. However, Miller had little opportunity to file first because defendants filed the New York action on the same day that they denied coverage. Moreover, the mere fact that a suit was not the first filed does not make it vexatious or contrived.

Thus, defendants fail to overcome the presumption against abstention. As indicated, most of the ten factors do not weigh heavily in either party's favor. The most significant factor is the fact that abstention would deprive a diversity litigant of a federal forum, and this factor weighs in Miller's favor. Thus, defendants fall short of demonstrating the exceptional circumstances necessary to justify Colorado River abstention.

**C.     Forum Non-Conveniens**

Under the common law doctrine of forum non-conveniens, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 802 (7th Cir. 1997). "A forum non-conveniens determination is consigned to the trial court's sound discretion." Id. A court may dismiss a case "[w]hen an alternative forum has jurisdiction to hear a case, and when a trial in the chosen forum would result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience or when

the chosen forum would generate administrative and legal entanglements for the trial court." Id. "[D]ismissal is . . . the exception, not the rule, and . . . there must be a strong showing that the alternative forum would be significantly more convenient." Charles Alan Wright, et al., 15 Federal Practice and Procedure § 3828 (2d ed. 1986) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)). Ordinarily, I "should not supplant the plaintiff's choice of forum" because "when the plaintiff chooses his home forum, it is reasonable to assume that this choice is convenient." Kamel, 108 F.3d at 802.

In evaluating a forum non-conveniens argument, I employ a two part inquiry. First, I determine whether an adequate alternative forum is available to hear the case. Id. In the present case, it is undisputed that New York provides an adequate alternative forum. Thus, I "balance the private and public interest factors that emerge in a given case." Id. The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the costs of obtaining the attendance of unwilling witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of a case easy, efficient and economical." Id. As previously indicated, the case could be conveniently tried in Wisconsin or New York, thus, these factors do not support dismissal.

Public factors include "the administrative difficulties stemming from court congestion, the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Id. These factors also do not weigh heavily in favor of dismissal. Even assuming that New

13

York law governs the substantive issues in the case, defendants will not be prejudiced by litigating in federal court in Wisconsin.

Thus, I decline to dismiss on the grounds of forum non-conveniens.

### III.  CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendants' motion to dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' alternative motion for a stay is also **DENIED.**

**IT IS FURTHER ORDERED** that defendants ABC Insurance Company, DEF Insurance Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company, PQR Insurance Company, STU Insurance Company, and XYZ Insurance company are **DISMISSED** from this case.

Dated at Milwaukee, Wisconsin this 25 day of July, 2005.

/s_____
LYNN ADELMAN
District Judge